JOHN C. RAGLAND AND SHIRLEY ANN RAGLAND, HUSBAND AND WIFE, APPELLANTS, V. NORRIS PUBLIC POWER DISTRICT, A PUBLIC CORPORATION AND POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, APPELLEE.

304 N.W.2d 55

Filed April 3, 1981. No. 43315.

Miles W. Johnston and Daniel E. Wherry of Johnston, Grossman, Johnston, Barber & Wherry for appellants.

Steven G. Seglin of Crosby, Guenzel, Davis, Kessner & Kuester for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C.J.

The appellants, John C. Ragland and Shirley Ann Ragland (Ragland), appeal from an order entered by the District Court for Lancaster County, Nebraska, finding that the Raglands had failed to present a written claim to the appellee, Norris Public Power District, a public corporation and political subdivision of the State of Nebraska (Norris), within 1 year from the accrual of such claim and further failed to commence an action within 2 years of such accrual, all as required by Neb. Rev. Stat. § 23-2416(1) (Reissue 1977).

While Ragland has raised both the issue concerning the sufficiency of the claim and the matter of the statute of limitations, we believe that the appeal must be decided against Ragland on the issue of the statute of limitations and we need not consider the form of the claim. We therefore affirm the judgment of the trial court.

In October of 1976, Norris, desiring to eliminate vegetation interfering with certain of its power lines, applied a chemical known as Tordon 10K to a hedgerow owned by Ragland and located generally on the Ragland property next to the county right-of-way. On June 10, 1977, Ragland appeared at the Lincoln office of Norris and informed the Lincoln office manager, Wilber Hanson, that Norris had damaged trees on Ragland's property and that Ragland wanted to be compensated by Norris. There is a dispute in the evidence concerning what, if any, written document Ragland presented at that time. Ragland maintains that he presented to Hanson a small piece of spiral note paper upon which he had written "205 x 100 = $20,500," indicating that 205 trees at $100 per tree had been damaged for a total of $20,500. Norris maintains that he simply provided Hanson with a business card on which he had written on the backside: "225 trees x 100 = $22,500." While an issue may be raised as to the sufficiency of the form of the claim, we need not decide that issue in this case. Assuming, but not deciding, that the claim was sufficient, Ragland still cannot obtain any relief in this action.

Thereafter, on June 23, 1977, Glen Schmieding wrote Ragland a letter, stating in part: "[W]e feel that a claim of $22,500 is entirely out of line." Between June 23, 1977, and March of 1979, further efforts were made by the parties to discuss the possibility of settlement, though no agreement was reached. In March of 1979 all contact between the parties regarding the hedgerow ceased. Norris made no effort to formally deny the claim unless the letter of June 23, 1977, from Norris to Ragland is considered to be such a denial. Likewise, Ragland made no effort to withdraw the claim and took no other positive action in regard to the claim until he filed suit on June 13, 1979.

The narrow question necessary for our consideration is whether the petition filed on June 13, 1979, was already barred by the statute of limitations appli-

cable to cases of this nature or whether Ragland was entitled to an additional 6 months from and after the day upon which the 2 years expired in which to file his petition.

Section 23-2416 provides as follows: "(1) Every claim against a political subdivision permitted under this act shall be forever barred, unless within one year after such claim accrued, the claim is made in writing to the governing body. Except as otherwise provided in this section, all suits permitted by this act shall be forever barred unless begun within two years after such claim accrued. The time to begin a suit under this act *shall be extended for a period of six months from the date of mailing of notice to the claimant by the governing body as to the final disposition of the claim or from the date of withdrawal of the claim from the governing body* under section 23-2405, if the time to begin suit would otherwise expire before the end of such period." (Emphasis supplied.)

Ragland concedes that his suit was not filed within 2 years from the date after the claim accrued. He maintains, however, that he has an additional 6 months in which to file the claim by reason of the final sentence of § 23-2416(1), which extends the statute of limitations for an additional 6-month period upon the happening of certain events and certain conditions. We believe that Ragland is in error in that regard.

The statute is clear beyond question that suit must be filed within 2 years after the date the claim accrued or it will be forever barred. There are but two exceptions to that provision. One is where the governmental subdivision takes some action on the claim before the 2 years has expired but at a time when less than 6 months remains for filing suit. The second occurs if the claimant withdraws his claim within the 2-year period but at a time when less than 6 months to file suit remains. Under either of those circumstances the statute of limitations is extended for an additional 6-month period from and after the date that the governmental sub-

division acts on the claim or the claim is withdrawn by the claimant. In order for the extended period to apply, one of two positive acts must occur: the governmental subdivision must act on the claim or the claimant must withdraw the claim. Absent the occurrence of either one of those affirmative steps, the statute of limitations runs at the end of 2 years from and after the date the claim accrued, and the action is barred.

In this case, Ragland concedes that the governmental subdivision did not formally take any action on his claim, though Norris maintains that its letter of June 23, 1977, was a denial of the claim. Likewise, Ragland concedes that he took no positive action to withdraw the claim before the expiration of the 2-year period. He argues, however, that if the governmental subdivision does not deny the claim before the 2 years have expired and the claimant does not withdraw the claim before that time, then the failure of either party to act shall constitute the performance of the act extending the statute of limitations. That argument does not follow from the plain language of the statute.

In adopting the act in question, the Legislature recognized that a governmental subdivision might wait until a day before the statute of limitations had run to deny a claim and thereby prevent the claimant from having an opportunity to employ a lawyer, make investigation, and file suit. For that reason, it provided that if the governmental subdivision acted on the claim before the statute of limitations had run but at a time when less than 6 months remained, an additional 6 months was to be granted to the claimant to provide him an opportunity to make the necessary investigation and file suit. Likewise, the Legislature recognized that no one could compel the governmental subdivision to act on the claim if it chose not to do so, and, therefore, the claimant would be placed in the difficult position of having lost his right simply by the inaction of the governmental subdivision. For that reason, the claimant was given the right to withdraw the claim up to 1 day before the

statute of limitations had run and thereby acquire an additional 6 months in which to obtain counsel, make investigation, and file suit. In order, however, for that right to come into being, the claimant is obligated to take an affirmative act, to wit: withdraw his claim. His failure to do so and his permitting the statute of limitations to run cannot be considered the performance of the act required by the statute, nor can the filing of a petition after the statute of limitations has run be considered the withdrawing of a claim prior to the time the statute has run.

In the instant case it is an unfortunate situation that the claim was not withdrawn before the statute had run. Ragland, however, urges us to interpret and construe the statute so as to have it read by implication that the failure to withdraw the claim before the statute runs, and before the governmental subdivision acts in denying the claim, is tantamount to denial or withdrawal and thereby causes the 6-month extension to come into effect. We are not, however, at liberty to do so.

"'A statute is not to be read as if open to construction as a matter of course. Where the words of a statute are plain, direct, and unambiguous, no interpretation is needed to ascertain the meaning. In the absence of anything to indicate the contrary, words must be given their ordinary meaning. It is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language. Neither is it within the province of a court to read anything plain, direct, and unambiguous out of a statute.'" *O'Neill Production Credit Assn. v. Schnoor, ante* p. 105, 108, 302 N.W.2d 376, 378 (1981); *Bachus v. Swanson,* 179 Neb. 1, 136 N.W.2d 189 (1965). The language of the statute in the instant case does not require any construction and is clear. Where the governmental subdivision does not act on a claim within 2 years after the claim accrued and the claimant does not withdraw the claim within 2 years after the claim accrued, all suits permitted by the Political Subdivisions Tort Claims Act are barred and

the additional 6-month period granted under particular circumstances does not apply. For that reason, the judgment of the trial court must be affirmed.

AFFIRMED.